[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14012
Non-Argument Calendar

_____

D.C. Docket No. 9:12-cv-81117-KLR

MIRIAM CRISMAN,

Plaintiff-Appellant,

versus

FLORIDA ATLANTIC UNIVERSITY BOARD OF TRUSTEES,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 3, 2016)

Before HULL, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Miriam Crisman appeals dismissal with prejudice on remand of her Florida Age Discrimination in Employment Act ("ADEA"), Fla. Stat. § 112.044(3)(a), case in her race and sex discrimination action against Florida Atlantic University ("FAU") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1). *Crisman v. Fla. Atl. Univ. Bd. of Trs.* (*Crisman I*), 572 F. App'x 946 (11th Cir. 2014). She also appeals summary judgment granted to FAU on her employment-discrimination claims. We remand in part and affirm in part.

## I. BACKGROUND

**A.    Factual History**

Crisman, a white female, was hired by FAU as a computer programmer in 1986 and served in various positions within the Office of Information Technology ("OIT"). In July 2012, her position was eliminated as part of a reduction in force necessitated by FAU budget cuts. For the last several years of her employment with FAU, Crisman served as a computer-applications coordinator in the Web Services & Applications group within OIT. Crisman primarily was responsible for maintaining the FAU content-management system and providing support to users of that system.

Crisman's third-level supervisor at the time of her termination was Mehran Basiratmand, the Director of Enterprise Systems and Chief Technology Officer for OIT. Basiratmand first joined FAU in 1999 and was Crisman's supervisor for

2

approximately three years.  During that period, Crisman represents Basiratmand "pick[ed] on" her and made her work life miserable.  R. at 1033.  She alleges Basiratmand made many inappropriate comments about women and exhibited negative behavior toward women generally.  He once showed Crisman a video of a partially nude woman on his work computer, often expected her to get coffee for everyone, and invaded her personal space by putting his arm around her in the hallway.  Crisman eventually sought help from the head of OIT at the time and was transferred to another department.  She came under Basiratmand's supervision again in 2011 but did not report to him directly or have much interaction with him, though he would still occasionally "come up and say silly things."  R. at 1036.  At her deposition, however, Crisman testified Basiratmand's behavior did not "have anything to do with [her] layoff."  R. at 1052.

In 2012, FAU experienced substantial budget cuts that required the elimination of several positions from OIT.  Jason Ball, the Associate Vice President and Chief Information Officer for OIT, was the sole decisionmaker responsible for determining which positions from OIT would be eliminated as part of the budget cuts, but Basiratmand provided recommendations regarding which positions in the groups he supervised could be eliminated with the least impact to the department.  Basiratmand recommended several positions for elimination, including Crisman's position.  At his deposition, Basiratmand explained he had

3

recommended Crisman's position for elimination, because the service performed by her position was no longer going to be provided, and the skill set required for her job was not transferable to the web-programming functions OIT needed to maintain. Ball accepted Basiratmand's recommendation; Crisman's position was approved for elimination. Crisman was notified her position was being eliminated on June 11, 2012, and her effective termination date was July 31, 2012. Five other positions in OIT were eliminated, all of which were held by male employees. Of those employees, two were white, one was black, one was Hispanic, and one was Asian. At her deposition, Crisman acknowledged Ball never had made any comments suggesting racial animus toward white people and testified she believed every OIT employee who had been retained was treated more favorably than she was treated, regardless of their race or sex.

The FAU layoff policy directed decisionmakers to consider employees' past performance and length of service in determining which employees would be terminated. The policy also stated tenured employees should not be laid off, if there were temporary employees in comparable positions and with similar skills in the same department. The policy required FAU to make reasonable efforts to relocate terminated employees, who had recall rights to appropriate alternative or equivalent positions within FAU. Eligible employees were entitled to recall rights for one year following layoff, meaning FAU would make reasonable efforts to

4

notify the employee of opportunities in the same or similar position from which the employee had been laid off and for which the employee met the qualification and experience requirements.  Crisman had recall rights under the terms of her layoff.

At the time of Crisman's termination, OIT had several temporary Help Desk positions filled by male-student employees.  In his deposition, Ball testified he had considered whether any temporary positions could be eliminated early in the layoff process, but those positions ultimately were retained.  Because Crisman was a full-time employee, she could not have been transferred to one of the temporary positions, because he had to maximize the number of employees in those positions, given the overall budget for part-time-student employees.  Ball further testified there were no vacant positions in OIT when Crisman was terminated; even if there had been, FAU had implemented a hiring freeze which would have prevented him from reassigning Crisman.

Ball also retained, and did not consider eliminating, the position of Erroll Kelley, a black male who was a computer-applications specialist in the OIT Database & Systems group.  Kelley was on extended medical leave for the majority of 2012, during which time other members of the Database & Systems group performed his duties.  Kelley returned to work for a period of time in May 2012, during which his physical work location was moved to the Help Desk, although Kelley, Ball, and Basiratmand all testified his job duties remained the

5

same. Basiratmand testified he had not recommended Kelley's position for elimination, because it was a valuable position that required a unique skill set. Basiratmand did not recommend Crisman be transferred to Kelley's position, because the position already was filled by Kelley. Although Kelley had been on extended leave, it was expected he would return. Kelley eventually separated from FAU in February 2013, since he had exhausted all of his leave and was unable to return to work because of his medical condition.

On at least one occasion following her termination, Crisman received an email from Sara DeMonte in the FAU Department of Human Resources ("HR") to inform her of available positions at FAU for which she might be qualified. DeMonte requested Crisman provide a copy of her resume and notify HR of any positions to which she applied. Crisman replied to the email and sent a copy of her resume, but she failed to state she had applied for any positions at that time. In her declaration, DeMonte said her office regularly sent such emails to Crisman following her termination, but it was Crisman's responsibility to apply for any job openings. FAU did not guarantee reemployment to former employees following a layoff. If a former employee applied for a position equivalent to the one from which she was laid off and notified HR of her application, HR would contact the department to request the former employee be given an interview. But the decision whether to interview the employee was made by the hiring department.

6

After her termination, through her own research on the FAU website, Crisman identified and applied for several FAU positions, including (1) academic support services coordinator in the department of Testing and Evaluations; (2) computer applications coordinator in the College of Business; and (3) paraprofessional in Student Health Services.  The Testing and Evaluations position was approved for hire on July 18, 2012, and posted on the FAU website on August 13, 2012.  Although Crisman interviewed for that position, she was not chosen, because FAU "decided to pursue other candidates who more closely [met their] needs."  R. at 2751.  The position ultimately was filled by another woman.  HR contacted the hiring department to request Crisman be interviewed for the College of Business position, which was posted on October 26, 2012, but the department chose not to interview Crisman.  She also was not selected for the Student Health Services position, which was posted on September 11, 2012.  During the year following Crisman's termination, six computer-applications-coordinator positions opened at FAU, including the College of Business position to which Crisman applied.  The first position opened for applications on July 27, 2012, and was located in the Architecture Department.  Crisman did not apply for that position.  The remaining positions were located in various departments and opened between October 2012 and February 2013.

7

**B.     Procedural History**

In October 2012, Crisman filed a complaint against FAU and raised Title VII race and sex discrimination claims as well as a Florida ADEA claim of age discrimination.  FAU moved to dismiss Crisman's Florida ADEA claim, because it was barred by Eleventh Amendment immunity.  The district judge denied the motion to dismiss by FAU, which filed an interlocutory appeal.  *Crisman I*, 572 F. App'x 946.  This court concluded FAU was entitled to Eleventh Amendment immunity from Crisman's Florida ADEA claim, because the consent-to-suit language in the Florida ADEA was insufficient to show state intent to be sued in federal court and no other textual evidence supported such an intent.  *Id.* at 949.  We vacated denial of the FAU motion to dismiss and remanded with instructions to dismiss Crisman's Florida ADEA claim, but we did not specify whether the dismissal should be with or without prejudice.  *See id.*  On remand, the district judge issued an order dismissing Crisman's Florida ADEA claim with prejudice, mistakenly stating we had remanded with instructions the claim be dismissed with prejudice.

FAU subsequently moved for summary judgment on Crisman's Title VII race and sex discrimination claims.  It contended Crisman had failed to establish a prima facie case of discrimination, because Kelley was not similarly situated to her and therefore not an appropriate comparator.  FAU also asserted Crisman could not

show its legitimate, nondiscriminatory reasons for her layoff were a pretext for discrimination.

Crisman argued she was not required to identify a similarly situated comparator to establish a prima facie case under a reduction-in-force ("RIF") analysis.  She maintained she had established a prima facie case under that standard, because FAU had failed to follow its own layoff policy during and after her termination.  She alleged FAU had failed to consider temporary positions for elimination, had not notified her of, or considered her for, the computer-applications-coordinator position in the Architecture Department, and had rejected her from positions for which she had applied during her recall period.  Crisman asserted Kelley had been treated more favorably than she was treated, since his position was kept open for him despite his inability to perform the essential functions of that job, because of his extended leave of absence.  Crisman also argued she had presented evidence from which a reasonable jury could conclude FAU's proffered reason for her termination was pretextual.

The district judge granted FAU's motion for summary judgment.  The judge determined Crisman had failed to prove a prima facie case of discrimination under either the traditional standard or the RIF standard.  The judge concluded Crisman had failed to satisfy the traditional standard, because Kelley and Crisman were not similarly situated, since they worked in different departments, had different job

9

titles and duties, and reported to different supervisors.  Consequently, Kelley was not an appropriate comparator.  Under the RIF standard, the district judge concluded Crisman could not establish she was qualified for another available position at FAU, when she was terminated.  The judge determined Crisman was not qualified for Kelley's job or the Help Desk positions held by temporary student employees, which were substantially different from Crisman's full-time job.  Even if Crisman were qualified for those positions, the judge explained the law did not require FAU to transfer Crisman or fire other employees to create a position for her.  The judge noted Crisman did not apply for the Architecture Department position, where Ball was not the hiring decisionmaker.  No inference of discrimination could be made, because Title VII does not require employers to rehire or transfer laid-off employees.  Discrimination can be inferred only when an employee actually applies for an available position and is rejected in favor of an individual outside the protected class.

The judge also concluded Crisman had failed to establish FAU intended to discriminate against her, when it eliminated her position.  Of the six employees who were laid off, Crisman was the only female, and the employees were of different races, evidencing Ball was not motivated by discriminatory animus.  Crisman did not show Ball, who was the final decisionmaker, possessed a discriminatory animus toward her.  Crisman instead contended Basiratmand

10

possessed a discriminatory animus toward women, which was imputed to Ball, because he followed Basiratmand's biased recommendation.  Even if Crisman's allegations concerning Basiratmand's behavior were true, they were insufficient to establish a prima facie case of gender discrimination.  Therefore, the district judge concluded FAU was entitled to summary judgment.

## II. DISCUSSION

### A.    Dismissal of ADEA Claims with Prejudice

On appeal, Crisman argues the district judge erred in dismissing her Florida ADEA claim with prejudice following our determination the consent-to-suit provision in section 112.044(4) of the Florida Statutes did not authorize such suits in federal court.  She asserts our decision in *Crisman I* held FAU could not be sued under the Florida ADEA in federal court, not that it could not be sued at all.  She contends the district judge should have dismissed her Florida ADEA claim without prejudice so she could pursue it in state court.

We review de novo granting a motion to dismiss.  *Davila v. Gladden*, 777 F.3d 1198, 1203 (11th Cir.), *cert. denied*, __ U.S. __, 136 S. Ct. 78 (2015).  The Florida ADEA authorizes employees aggrieved by a violation of that statute to bring suit in "any court of competent jurisdiction."  Fla. Stat. § 112.044(4); *see also Hartley v. Ocean Reef Club, Inc.*, 476 So. 2d 1327, 1330 n.1 (Fla. 3d Dist. Ct. App. 1985).  The Eleventh Amendment prevents states from being sued in federal

11

court without their express consent.  *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304-05, 110 S. Ct. 1868, 1872-73 (1990).

The district judge erred in dismissing Crisman's Florida ADEA claim with prejudice.  In *Crisman I*, we held Crisman could not pursue her Florida ADEA claim against FAU in federal court.  *See Crisman I*, 572 F. App'x at 949.  We did not state Crisman's suit also would be barred in state court, nor did we explicitly direct the district judge to dismiss Crisman's claim with prejudice.  *Id.*  Section 112.044(4) appears to authorize Crisman to pursue an action under the Florida ADEA against FAU in state court; neither the district judge nor FAU identified any reason Crisman would not be able to do that.  Fla. Stat. § 112.044(4); *see also Hartley*, 476 So. 2d at 1330 n.1.  Crisman's Florida ADEA claim should have been dismissed without prejudice.  We remand in part for the limited purpose of allowing the district judge to enter dismissal without prejudice to permit Crisman to file her ADEA case in state court.

## B.    Summary Judgment

Crisman contends the district judge erred in granting summary judgment to FAU on her Title VII race and sex discrimination claims.  She argues she was not required to identify a similarly situated comparator to establish a prima facie case, because she was terminated as part of a reduction in force.  She also contends the judge erred in concluding she did not prove she was qualified for another position

at FAU or FAU had intended to discriminate against her when it eliminated her position. Crisman maintains she identified several available positions for which she was qualified; she should have been notified of, and considered for, those positions under the FAU recall policy. She further notes FAU never considered for elimination any of the temporary positions held by male employees and kept a position open for Kelley, a black male, although he was unable to work. Crisman asserts her failure to apply for the open positions she identified is inconsequential, because FAU had failed to notify her of those positions. She also contends the district judge erred in finding she was not qualified for the positions identified. Crisman argues the record contains evidence from which a factfinder reasonably could conclude FAU intended to discriminate against her on the basis of her race and gender when it eliminated her position; therefore, the proffered nondiscriminatory reasons by FAU were pretextual.

We review a grant of summary judgment de novo and view the evidence in the light most favorable to the nonmoving party. *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1211 (11th Cir. 2008). Summary judgment is appropriate where the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Damon v. Fleming Supermarkets of Fla.,*

13

*Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999).  But a mere scintilla of evidence in support of the nonmoving party is insufficient to defeat a motion for summary judgment.  *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009).

Title VII makes it unlawful for employers to discharge or otherwise discriminate against an employee because of her race or sex.  42 U.S.C. § 2000e-2(a)(1).  Absent direct evidence of discrimination, a plaintiff may prove her case through circumstantial evidence, using the *McDonnell Douglas*[1] burden-shifting framework.  *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002).  The plaintiff bears the initial burden of establishing a prima facie case of discrimination.  *Id.*  If the plaintiff establishes a prima facie case, she creates a rebuttable presumption the employer unlawfully discriminated against her.  *Id.* The burden then shifts to the employer to state a legitimate, nondiscriminatory reason for the challenged employment action.  *Id.*  If the employer satisfies this burden of production, the burden shifts back to the plaintiff to demonstrate the proffered reason is merely a pretext for unlawful discrimination.  *Id.* at 1272-73. Although the burden of production shifts back and forth, the ultimate burden of persuasion remains with the plaintiff.  *Id.* at 1273.

To establish a prima facie case of race or sex discrimination under Title VII, a plaintiff must show "(1) she is a member of a protected class; (2) she was

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).

14

subjected to adverse employment action; (3) her employer treated similarly situated employees who are not members of the plaintiff's class more favorably; and (4) she was qualified for the job . . . at issue." *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 842-43 (11th Cir. 2000). Where the plaintiff was terminated as a result of a reduction in force, however, she also may establish a prima facie case by showing (1) she is a member of a protected class; (2) she was terminated; (3) she was qualified to assume another position at the time of her termination; and (4) there is evidence from which a reasonable factfinder could conclude the employer intended to discriminate against her in reaching the employment decision at issue. *See Jameson v. Arrow Co.*, 75 F.3d 1528, 1531-32 (11th Cir. 1996); *Coutu v. Martin Cnty. Bd. of Comm'rs.*, 47 F.3d 1068, 1073 (11th Cir. 1995).

When an employer reduces its work force for economic reasons, it is not required to transfer or rehire laid-off employees in a protected class as a matter of course or to fire employees outside of the protected class to create positions for employees within the protected class. *Jameson*, 75 F.3d at 1532-33. Where a discharged employee applies for another position available at the time of her termination for which she is qualified, however, the employer must consider her for that position and may not deny her the position on the basis of her membership in a protected class. *Id.* at 1533. If an employee fails to apply for a particular

15

position, she cannot establish a prima facie case of discrimination, unless the employer lacked a formal system for providing notice of job opportunities, and the employee had no way of knowing the position was available. *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1345-46 (11th Cir. 2003). When an employer has a formal system for posting its vacant positions and requires an application to be filed for the position, and the employee was not dissuaded or prevented from applying for the position by management, the employee's failure to apply for the position prevents her from establishing a prima facie case of discrimination. *Id.*

Even assuming Crisman is correct she was not required to identify a similarly situated comparator in order to establish a prima facie case, any error the judge made in applying that requirement to her claim was harmless. The judge also determined she had failed to establish a prima facie case under the RIF standard, which did not include the "similarly situated" prong. Under that standard, the judge correctly concluded Crisman failed to establish a prima facie case of discrimination, because she did not show she was qualified to assume another position available at FAU at the time of her termination. The district judge did not err in granting summary judgment to FAU.

Crisman's argument she should have been reassigned either to Kelley's position or to one of the temporary Help Desk positions filled by male-student employees is unavailing. Regardless of whether she was qualified for those

16

positions, FAU was not obligated to fire Kelley or the male-student employees to create a position for Crisman. *Jameson*, 75 F.3d at 1532-33. FAU was required to consider Crisman only for positions available at the time of her termination for which she was qualified and for which she actually applied. *Id.* at 1533. The positions Crisman identified that were available at the time of her discharge were the academic-support-services-coordinator position in Testing and Evaluations[2] and the computer-applications-coordinator position in the Architecture Department. Crisman applied and was interviewed for the Testing and Evaluations position but ultimately was not selected, because FAU "decided to pursue other candidates who more closely [met their] needs." R. at 2751. Consequently, FAU fulfilled its obligation to consider Crisman for that position; there is no evidence she was denied the position on the basis of her race or gender. *Jameson*, 75 F.3d at 1533.

FAU was under no obligation to consider Crisman for the Architecture Department position, because she had not applied for it. *Smith*, 352 F.3d at 1345-46. Crisman contends her failure to apply for that position is immaterial, because FAU failed to notify her of its availability. The record shows, however, FAU had a formal system for posting open positions on its website and required individuals

---

[2] Although it appears this position was not open for applications until August 13, 2012, after Crisman's effective termination date, the record shows the position was approved for hire on July 18, 2012, prior to Crisman's termination date. Viewing the evidence in the light most favorable to Crisman, we consider this position as having been "available" at the time of her discharge. *See Schwarz*, 544 F.3d at 1211.

17

who wished to be considered to submit an application. *Id.* The record also demonstrates Crisman was aware of this system. On at least one occasion after her termination, Crisman received and responded to an email from DeMonte regarding available FAU positions. Crisman stated she had used the FAU website to search for and apply to several positions following her discharge. Because she did not apply for it, Crisman cannot rely on the Architecture Department position to establish a prima facie case of discrimination. *Id.*

The district judge correctly concluded Crisman failed to establish FAU intended to discriminate against her on the basis of her race or sex, when it eliminated her position. The record shows layoffs were necessary because of FAU budget cuts; both Ball and Basiratmand testified they had determined which positions to eliminate based on the necessity of the position to the OIT and the impact elimination of the position would have on the provision of services. Of the six employees in Crisman's department whose positions were eliminated, Crisman was the only female and the employees were of various races. Crisman concedes Ball never made any comments showing he harbored any racial animus toward white people. She did not present any evidence to suggest Ball personally was motivated to eliminate her position because of her sex. Crisman instead asserts Basiratmand's inappropriate behavior towards her shows his discriminatory animus toward women and suggests that animus tainted his recommendation that

18

her position be eliminated.  Most of the conduct about which Crisman complains took place long before her termination.  She even testified Basiratmand's inappropriate conduct had nothing to do with her layoff.  Consequently, the record lacks sufficient evidence from which a reasonable factfinder could conclude the decision to eliminate Crisman's position was impermissibly motivated by her race or sex.  *Garczynski*, 573 F.3d at 1165; *Jameson*, 75 F.3d at 1532.  Therefore, the district judge did not err in concluding Crisman failed to establish a prima facie case of race or sex discrimination.

**REMANDED IN PART AND AFFIRMED IN PART.**